OPINION
Defendant-appellant Jeremy Dunn appeals his conviction in the Stark County Court of Common Pleas of one count of having weapons while under disability in violation of R.C. 2923.13, a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On November 17, 2000, the Stark County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02, a felony of the first degree, one count of felonious assault in violation of R.C. 2903.11, a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13, a felony of the third degree. Both the rape and felonious assault charges included firearm and repeat violent offender specifications. At his arraignment on December 1, 2000, appellant entered a plea of not guilty to the charges contained in the indictment.
Prior to trial, appellant waived his right to a jury trial on the charge of having weapons while under disability. Upon appellee's motion, both repeat violent offender specifications were dismissed by the trial court. Thereafter, a jury trial commenced on January 18, 2001 on the rape and felonious assault charges. The following evidence was adduced at trial.
Commencing in the summer of 2000, Tonya Carpenter had an off and on relationship with appellant. At approximately 3:15 p.m. on November 6, 2000, Carpenter arrived home from her job and found appellant in her bedroom. According to Carpenter, appellant "was a little ouchy, and he had talked to me; and he asked me to lay beside him on the bed." Transcript at 204. After Carpenter laid down on the bed, appellant asked her to have sex with him. Carpenter, however, refused. Appellant then asked Carpenter, after his third request for sex was denied, what she would do if he pulled a gun from underneath the pillow. Since she knew that she did not have a gun in her house, Carpenter laughed.Appellant then pulled out a gun. After Carpenter had intercourse with appellant, appellant "unloaded it [the gun], put one bullet in it and said we were going to play Russian roulette." Transcript at 205-206. After appellant put one bullet in the gun and pointed it towards Carpenter's head and neck area, she turned her head away. Carpenter next heard a click as appellant pulled the trigger. After hearing the gun click, Carpenter began getting dressed. When she asked appellant what he would have done if he had killed her, appellant "stated well, if I would kill you, I would kill your kids as they would come in the back door one by one from school." Transcript at 206. At trial, Carpenter also testified that appellant told her that he "would have blown your F'ing head off." Transcript at 209. Appellant, who told Carpenter after pulling the trigger that it was her "lucky day", gave Carpenter a bullet. Transcript at 210.
The night of November 6, 2000, Carpenter wrote out a statement in which she indicated that if anything happened to her or her children, appellant was responsible since he had threatened to kill them. After having the statement notarized the next morning, Carpenter gave the same to her girlfriend, Christina Weber, along with the bullet. Carpenter also told her girlfriend what had happened.
On Wednesday, November 8, 2000, Carpenter reported the incident to the Massillon Police Department. After the Massillon Police Department wired her, Carpenter met with appellant. During their meeting, appellant "stated to me on the wire that it was justice done and that he should have blown my F'ing head off . . ." Transcript at 224. Appellant also told Carpenter that he had the gun at Carpenter's house because the owner was in trouble. When asked what appellant told her on the tape about the plan, Carpenter testified that "the plan was in the night when I was sleeping was to come in the house the second way to kill me and my kids and to shoot me and go upstairs and shoot both of my kids." Transcript at 227. Carpenter, whose children have toy guns, testified at trial that the gun used by appellant did not look like a toy gun. At trial, Detective Mizeres, who examined the bullet that appellant had given to Carpenter, testified that the bullet was a .22 long rifle bullet which "absolutely" appeared to be real. Transcript at 394.
At the conclusion of the evidence, the jury, on January 19, 2001, found appellant not guilty of the rape and felonious assault charges. However, as memorialized in a Judgment Entry filed on January 31, 2001, the trial court found appellant guilty of the charge of having weapons while under disability[1] and sentenced appellant to a three year prison sentence.
It is from the trial court's January 31, 2001, Judgment Entry that appellant prosecutes his appeal, raising the following assignment of error:
 WHETHER THE VERDICT FINDING APPELLANT GUILTY OF WEAPON UNDER DISABILITY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE THEREBY DENYING APPELLANT A FAIR TRIAL?
 I
Appellant, in his sole assignment of error, argues that his conviction for having weapons while under disability in violation of R.C. 2923.12
was not supported by sufficient evidence. We, however, disagree.
In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus.
Appellant, in the case sub judice, was convicted of having weapons while under disability in violation of R.C. 2923.13. Such section states, in relevant part, as follows:
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.[2]
A firearm is defined in R.C. 2923.11(B)(1) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1) further provides that a "firearm" "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."
Appellant specifically contends that his conviction is not supported by sufficient evidence since appellee failed to prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense. Pursuant to R.C. 2923.11(B)(2), "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Thus, in determining whether a firearm was operable or could have been rendered operable at the time of the offense, the trier of fact is permitted to consider all relevant facts and circumstances surrounding the crime, including any implicit threats made by the individual controlling the firearm. State v. Thompkins (1997), 78 Ohio St.3d 383, syllabus. See alsoState v. Murphy (1990), 49 Ohio St.3d 206.
Upon our review of the record and after reviewing all relevant facts and circumstances surrounding the crime, we find that appellee proved beyond a reasonable doubt that the firearm used by appellant was operable or could have been readily rendered operable at the time of the offense. At the trial in this matter, Carpenter testified that appellant unloaded the gun, put one bullet in it, and then told her that they were going to play Russian roulette. Appellant then pointed the gun at Carpenter and pulled the trigger. After the gun did not fire, appellant told Carpenter that it was her "lucky day" and gave her the bullet. When appellant was asked by Carpenter what he would have done had he killed her, appellant told Carpenter that he would have killed her children as they came home from school. Carpenter also testified that during her wiretapped meeting with appellant, appellant "stated to me on the wire that it was justice done and that he should have blown my F'ing head off . . ." Transcript at 224. Carpenter, whose children play with toy guns, also testified that the gun used by appellant looked real since "[h]ow could a gun look that real and be a toy." Transcript at 279. Finally, Detective Mizeres testified that the bullet given by appellant to Carpenter "absolutely" appeared to be real. Transcript at 394.
Based on the foregoing, we find that there was sufficient circumstantial evidence to support appellant's conviction for having weapons while under disability. As noted by the Ohio Supreme Court inThompkins, supra. "it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." Id. at 384. In this matter, appellant, while brandishing a gun, pointed the gun at Carpenter's head and pulled the trigger. Appellant also threatened both Carpenter's life and that of her children. Clearly, based on appellant's action and threats, there was sufficient evidence from which the trial court could conclude that the firearm in this matter was operable or capable of readily being rendered operable.
Appellant's sole assignment of error is, therefore, overruled.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellant.
Hon. Julie Edwards, P.J. Hon. William Hoffman, J. Hon. John Boggins, J. concur.
[1] At trial, appellant had stipulated that he previously had been convicted of a felony offense of violence, to wit, burglary, in Stark County Common Pleas Case No. 1998CR0535.
[2] As was stated previously, appellant stipulated prior to trial that he previously had been convicted of a felony offense of violence.